# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1250
_____

United States of America

*Plaintiff - Appellee*

v.

Sharmarke Omar Mohamed

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: March 16, 2026
Filed: June 10, 2026
[Unpublished]
_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Following a bench trial, Sharmarke Omar Mohamed was convicted of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). He appeals from the district court's[1] judgment raising two

_____

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

issues: (1) the denial of his motion to suppress evidence on the ground that the magistrate judge was without jurisdiction to issue a warrant for Mohamed's phone-location data; and (2) the denial of his motion to dismiss the indictment on Speedy Trial Act grounds, 18 U.S.C. §§ 3161-3174. We affirm.

During an investigation by the Des Moines Police Department into a conspiracy involved in the distribution of counterfeit Oxycodone pills, a confidential source informed the police that the conspiracy had obtained a new source for pills. The source was identified as Mohamed, and over a six-week period, Mohamed sold over a thousand pills to the confidential source. During the controlled buys, the police discovered that Mohamed was driving a Volkswagen Jetta.

On January 3, Mohamed informed the confidential source that he was going out of state to obtain more pills. Officers followed Mohamed's Jetta until it appeared he was leaving Iowa and heading into Minnesota. Because Mohamed had previously been on probation, law enforcement had a cell phone number for him. Armed with this information, the police obtained a warrant on January 5, 2024, to gather location data for the phone pursuant to Federal Rule of Criminal Procedure 41 and Section 2703 of the Stored Communications Act. On January 11, the investigators obtained a GPS warrant for the Jetta, and a tracker was affixed to the vehicle on the next day.

While tracking Mohamed's car and phone on January 18, 2024, investigators observed that the Jetta had stopped at the Minneapolis-Saint Paul International Airport and that the phone and car had separated. While the car stayed in Minnesota, the phone was transported back to a Des Moines residence where the officers observed a black BMW rental car with Minnesota plates. Later that evening, the phone left Des Moines and was electronically tracked through Iowa, Kansas, Oklahoma, Texas, and New Mexico, apparently en route to Arizona. The investigators obtained a warrant to search the BMW based on their belief that Mohamed had traveled to Arizona to pick up more counterfeit pills containing fentanyl.

After being in Phoenix for less than 24 hours, Mohamed's phone began to track back to Iowa. When the BMW crossed into Iowa, the investigators observed that it was being driven by Mohamed. Law enforcement stopped the vehicle and searched it pursuant to the warrant. During the search, investigators found a duffel bag containing approximately 30,000 fentanyl pills. Mohamed was provided with his <u>Miranda</u> warnings and subsequently admitted to traveling to Arizona to purchase approximately 25,000 fentanyl pills.

Mohamed was indicted in February but the path to trial was complicated. After Mohamed's attorney moved to continue, the court set the case for a jury trial on July 8, 2024. A superseding indictment was filed on April 16, 2024, which added a co-defendant and restarted the Speedy Trial Act clock. Mohamed's relationship with his CJA appointed counsel was tortuous and eventually Mohamed was given leave to proceed *pro se*. During the course of the pretrial proceedings following the superseding indictment, Mohamed's counsel made two additional motions to continue that were granted after the magistrate judge found that it served the ends of justice. Mohamed himself made an additional successful continuance motion that the court found was supported by ends of justice.

The bench trial commenced as scheduled on September 30, 2024, and Mohamed was convicted for being in possession of approximately 30,000 fentanyl pills with intent to distribute. He was subsequently sentenced to a 204-month term of imprisonment.

We review the denial of a motion to suppress applying a clear error standard to factual findings and a *de novo* standard to the court's legal conclusions. <u>United States v. Dickerman</u>, 954 F.3d 1060, 1065 (8th Cir. 2020). We review Speedy Trial Act rulings reviewing the factual findings for clear error and the court's ultimate conclusion for an abuse of discretion. <u>United States v. Porchay</u>, 651 F.3d 930, 935 (8th Cir. 2011). A judge's finding that the ends of justice favor a continuance is a factual finding that is reviewed for clear error. <u>United States v. Grady</u>, 88 F.4th 1246, 1255 (8th Cir. 2023).

Mohamed first argues that the magistrate judge lacked authority to issue a warrant for his phone-location data because he was outside the district when the warrant issued, and Federal Rule of Criminal Procedure 41(b)(2) limits the magistrate's jurisdiction to issue a warrant for "a person or property outside the district" unless "the person or property is located within the district when the warrant is issued."

But the geographical limitations of Rule 41(b) do not apply to warrants issued under the Stored Communications Act, 18 U.S.C. §§ 2701-2713. The Act provides its own jurisdictional and geographic requirements. The warrant must be issued by a court of competent jurisdiction, which includes a magistrate judge of "any district court of the United States" that "has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Mohamed does not challenge that the Southern District of Iowa was the jurisdiction with authority over his offense, nor could he. Mohamed sold fentanyl pills in the district, and the police investigation concluded with "a planned traffic stop on January 21st, 2024, in the Southern District of Iowa."

Section 2703(a) of the Stored Communications Act also states that a government entity may obtain this electronic information "only pursuant to a warrant issued using the procedures" provided "in the Federal Rules of Criminal Procedure," but Rule 41(b) is not considered a procedural rule under the circumstances. Our sister circuits have considered the relationship between Rule 41(b) and the Stored Communications Act and have concluded that Rule 41(b) is a substantive provision. United States v. Berkos, 543 F.3d 392, 397-98 (7th Cir. 2008); see also United States v. Loera, 24 F.4th 144, 158 (2d Cir. 2022) (collecting cases). We agree. Rule 41(b) is not incorporated into § 2703(a) as a procedural rule because it "does not address the specific method or particular way of issuing a warrant." United States v. Ackies, 918 F.3d 190, 202 (1st Cir. 2019). Section 2703(a) authorized the magistrate judge to issue the warrant for Mohamed's phone-location data, not Rule 41(b).

Even if this were not the case, the good-faith exception applies where a defendant alleges a violation of Rule 41(b).  See United States v. Horton, 863 F.3d 1041, 1052 (8th Cir. 2017); United States v. Thorne, 169 F.4th 1117, 1124-25 (D.C. Cir. 2026) (collecting cases).  In United States v. Leon, 468 U.S. 897, 921 (1984), the Supreme Court recognized the folly of "[p]enalizing the officer for the magistrate's error, rather than his own" noting that there was no logical deterrence in penalizing police for errors committed by magistrate judges.  Here, the officers reasonably relied on a facially sufficient warrant and the claim that the officers acted deliberately and recklessly is untenable when at least four circuit courts have ruled that warrants issued under the Stored Communications Act are exempt from Rule 41(b)'s limitations.

Mohamed raises for the first time on appeal that the location-data warrant lacks probable cause.  Because he did not raise this issue before the district court and offers no explanation why he failed to do so, we decline to address this argument.  See United States v. Lebeau, 867 F.3d 960, 973 (8th Cir. 2017) (The defendant "did not raise this issue below, and has not offered any reason for his failure to do so. As a result, this issue is not properly before us.").  The district court did not err in denying Mohamed's motion to suppress.

Mohamed also argues that the district court erred when it failed to dismiss the charges on the grounds that his Speedy Trial Act rights were violated.  Each of the periods excluded from the Speedy Trial Act calculation were based on either Mohamed's or his former counsel's motions for continuance.  In each case, the district court found that the time was excluded on the basis that it served the ends of justice.  We have reviewed the circumstances surrounding each motion and find no error, clear or otherwise, in the finding that the continuances served the ends of justice.  When those days are excluded, the case proceeded to the bench trial within the seventy-day time allowed by the Speedy Trial Act.

Mohamed also claims that his Speedy Trial Act rights were violated because the delay did not benefit him.  Whether a defendant gains an advantage from his

-5-

attorney's requested continuances is not a consideration in calculating whether a Speedy Trial Act violation has occurred. Fewer than seventy non-excludable days passed between Mohamed's indictment and trial. The district court did not abuse its discretion in reaching its ultimate Speedy Trial Act ruling and denying Mohamed's motion to dismiss.

For these reasons, we affirm the district court's judgment.

_____